JOSE ROSALINO ANTONIO-CANDELARIA,    :
and all others similarly situated, et. al.,    :
    :
    Plaintiffs,    :
    :
vs.    :    1:06-CV-39 (WLS)
    :
GIBBS FARMS, INC., et. al.    :
ET. AL.    :
    :
    Defendants.    :
_____    :

## ORDER

Pending before the Court is Defendants' motion to dismiss Plaintiffs' state law claims. (Doc. No. 81). Also before the Court are Defendants' motions to dismiss for lack of jurisdiction and for failure to engage in discovery. (Docs. No. 78, 85). For the following reasons, the motion to dismiss the state law claims arising before 2004 (Doc. No. 81) is **GRANTED,** the motion to dismiss for lack of subject matter jurisdiction (Doc. No. 85) is **DENIED as moot;** and the motion to dismiss for failure to engage in discovery (Doc. No. 78) is **DENIED.**

As stated in previous orders issued in this particular case, the Court is very familiar with the claims, parties and attorneys involved in this case and related cases. (*See* Doc. Nos. 24, 34; Santos Hernandez-Nicolas, et. al., v. Gibbs Patrick Farms, Inc., et. al., 6:04-CV-10 (WLS); J. Carmen Vergara-Perdomo v. Wendall Roberson Farms, Inc., et. al., 1:04-CV-77 (WLS). The Court is aware that some of the Plaintiffs, Defendants and attorneys in the previous and related cases are the same as those in the present case. This awareness and knowledge enables the Court to gain an insight to this litigation that someone unfamiliar with this could not have.

In light of this knowledge, and to make it clear to any court reviewing this Court's

rulings on issues in this case, the Court must make some fundamental and candid observations. There is ample historical evidence to support a claim or concern that certain classes of individuals have suffered various forms of exploitation by the economic, political and social systems that have existed throughout the history of the United States. Historically, persons who perform farm labor, whether the person was a citizen or not, have, as a class, suffered various forms of exploitation. Further, foreign farm workers, often called "migrant workers," have been a particular subset of farm workers who have suffered various forms of exploitation. This exploitation has resulted in inadequate and substandard pay, housing, and health care, among other things. Also, the migrants' status as non-citizens has increased the likelihood that unscrupulous individuals will exploit their situation.

In order to protect workers, the United States has enacted various labor laws. *See e.g.,* 29 U.S.C. § 201 *et. seq.* These labor laws and other laws also protect farm workers and migrant farm workers. The Government has also enacted specific statutes governing the employment of migrant farm workers. 8 U.S.C. §§ 1101, 1188. Of interest to this case is the laws governing migrant farm workers called "H2-A workers." who are foreign nationals that are deemed necessary to work in certain industries when domestic workers are unavailable. 8 U.S.C. §§ 1101, 1188; 20 CFR 655.0-655.113. The present case, and the ones referred to earlier, involve H2-A workers.

With this brief social and legal history in mind, H2-A workers have filed various suits in this district to protect their federally protected rights. Essentially, the workers complain that they have not been paid the amount due to them for the number of hours worked or the number of crops harvested and processed. The Plaintiffs have complained that they have been inadequately provided travel pay as guaranteed by federal law. None of the cases filed in this part of the district over the last five years have gone to trial or resulted in an explicit finding that the Defendant/Employers were willfully underpaying the workers. The cases have resulted in settlement agreements whereby it is clear that some or all of the workers were

2

underpaid. It could be interpreted from the settlement documents that some of the Defendants acted willfully. Even so, the evidence presented to the Court in various forms seems to indicate more of a pattern of honest mistakes than willful misconduct. Also, when the evidence of underpayment has been brought to the attention of the Defendants during litigation, the Defendants appear to have readily admitted mistakes and took corrective action.

The overall picture seen by the Court in dealing with these H2-A cases over the past few years is fairly simple. The farmers, for various reasons, have underpaid some or all of the workers for work performed or travel. The farmers have attempted to rectify the shortages at various stages of the litigation. Plaintiff's, through their attorneys, have often overstated the amounts owed and the reasons for the under-payments of pay or travel expenses by the farmers.[1]

In each case filed before this Court, the Plaintiffs' have pursued a very aggressive and expansive strategy. The Plaintiffs have sought emergency or expedited relief and discovery, temporary restraining orders, motions for contempt, immediate re-hire of named workers and filed an extraordinary number of pleadings. Further, the Plaintiff's have treated each case and request for any type of relief, be it discovery request to hearings, as an emergency. The Court has scheduled hearings and expedited rulings to accommodate Plaintiffs. Plaintiffs have sent the Court letters and communicated with the Court's staff to ask the Court to address a pending matter.

Consistent themes in all of Plaintiffs pleadings, arguments and other communications to the Court are that the individual Plaintiffs are unable to work because of defendants' misconduct; unable to travel to hearings because of Plaintiffs' poverty; and, that the Plaintiffs'

---

[1]. The Court acknowledges that at least one Farmer/Defendant admitted to being vindictive. Defendant Roberson, essentially admitted that because of her anger with Plaintiff's attorneys, she wilfully refused after the complaint was filed to re-hire the complaining workers the next season. J. Carmen Vergara-Perdomo v. Wendall Roberson Farms, Inc., et. al., 1:04-CV-77 (WLS).

are only available during certain months, because of work or poverty, to testify or otherwise

present their cases.  At the same time, Plaintiffs insist that this Court drop all other business to

address issues raised by Plaintiffs and then file motions for  reconsideration when the Court

makes findings of fact inconsistent with Plaintiffs' theory of recovery.  While all this is going

on, Plaintiffs seek to come up with new theories of recovery and add additional Plaintiffs.  If

that is not enough, Plaintiffs asks this Court to continue to exercise jurisdiction over

settlement agreements in order to address disputes arising from the settlement agreements.

Ταβ To further complicate matters, it is obvious from the record, that Plaintiffs' lawyers do

not have the ability to communicate with Plaintiffs on a regular basis.  At the same time that

Plaintiffs' attorneys are having trouble staying in touch with their clients, they are adding

additional Plaintiff's to the lawsuit.

Τα One of the results of these lawsuits is that the Plaintiffs' pay shortages have been

resolved, though not necessarily in a timely manner.  Another result is that this Court has

extended a tremendous amount of judicial resources and time on these cases.  In the Court's

opinion, the same result could have been achieved without such an extravagant expenditure of

the attorneys', Plaintiffs', Defendants' and the Court's resources.

Τα With these observations in mind, the Court will closely examine the pending motions

in an effort to streamline this case.  Without early intervention, the pleadings and claims in

this case could mushroom out of proportion to the viable claims.

Motion to Dismiss-Statute of Limitations

Defendants move to dismiss certain portions of Plaintiffs' complaint as being barred

by the applicable statute of limitations.  According to Defendants, Plaintiffs' state law breach

of contract claims, Counts III-VI are barred by the statute of limitations, or in the alternative,

for lack of subject matter jurisdiction.

Τα Counts I and II are claims made pursuant to the FLSA.  Count I  is for travel

reimbursement and Count II is an alleged  "hours shorting" claim.  According to Defendants,

damages for these two claims are either non-existent or minimal at best.  Counts I and II apply

to 15 Plaintiffs and Opt-in Plaintiffs.

Counts III-VI encompass 43 proposed Plaintiffs who allege breaches of their

employment contract under Georgia state law.  The claims in question for purposes of these

motions to dismiss involve some 60 claims arising during 2000-2003.  Defendants maintain

that the 2000-2003 claims are time barred and that this Court should not exercise jurisdiction,

28 U.S.C. § 1367, over any remaining claims as they are not related to the federal claims.

Plaintiffs maintain that the claims are not barred by the statute of limitations and that this

Court should exercise supplemental jurisdiction over these claims.

Essentially, the breach of contract claims mirror those of the FLSA claims.  In Count

III, Plaintiffs seek unpaid wages; in Count IV Plaintiffs claim that they were not paid the

"adverse effect wage rate" ("AEWR") established pursuant to federal law[2]; County V alleges

Plaintiffs were not reimbursed certain travel costs incurred for travel from Mexico in violation

of 20 C..F..R.. § 655.102(b)(5)(1); and, Count VI alleges Plaintiffs were not reimbursed

certain travel costs incurred for travel from Mexico in violation of 20 C.F.R. §

655.102(b)(5)(ii).

As pointed out by Defendants, the FLSA has a maximum statute of limitations of 3

years. 29 U.S.C. § 255.  Similarly, the Department of Labor only requires employers to

maintain records of H-2A workers for 3 years.  20 C.F.R. § 655.102(b)(7)(iv).   The alleged

state law claims date back 6 years, to 2000.  All of the 43 proposed Plaintiffs/Opt-ins to the

Plaintiffs complaint and amended complaints have claims that are based on events that are

more than two years old.  In other words, the majority of the claims in this case arise under

---

[2]. The AEWR wage in 2004 was $7.88 per hour while the minimum wage as
established by the FLSA was $5.15 per hour.

Plaintiffs' theory of state law breach of contract as opposed to FLSA claims.[3] Defendants move that Counts III-VI be dismissed for all claims arising prior to 2004 as barred by the statute of limitations.

Defendants' argue that Georgia law is clear that Plaintiffs' state law breach of contract claims are governed by a two year statute of limitations. As such, all claims made in Counts III-VI that arose prior to 2004 are barred by the statute of limitations.[4]

The Georgia statutes of limitations governing suits on contracts are O.C.G.A.§§ 9-3-22, 9-3-24. For our purposes the statute of limitations is either a two year statute of limitations or a six year statute of limitations. O.C.G.A. §§ 9-3-22, 9-3-24. The two year statute of limitations is directed at the recovery of lost wages.[5] Id. Defendants maintain that two year statute of limitations governs the claims in this case.

As pointed out by Defendants, this Court is bound to follow any controlling Eleventh Circuit law or the interpretation of the law by the Georgia's highest court. Technical Coating Applicators, Inc. v. U.S. Fidelity & Guaranty Co., 157 F.3d 843 (11ᵗʰ Cir. 1998). As the following discussion illustrates, such a simple directive is not that easy in this case.

---

[3]. The Court notes that Defendants have produced a grid/table listing the Plaintiffs and their alleged claims. At present there are 43 possible Plaintiffs. Of those Plaintiffs, there are 15 Plaintiffs/Opt-in with FLSA claims. All 43 Plaintiffs/Opt-ins have one or more state law claims fro breach of contract dating from the years 2000, 2001, 2002, 2003. A quick, and possibly inaccurate count, reveals that there are at least 59 separate claims for breach of contract.

[4]. Based on the discussion above, it appears all of the claims made in Counts III-VI arose before 2004. As the number of Plaintiffs, Opt-in Plaintiffs and claims are not completely clear, the Court makes it clear that only state law breach of contract claims outside the statute of limitations are subject to this motion to dismiss.

[5]. O.C.G.A. § 9-3-22 states: All actions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law shall be brought within 20 years after the right of action has accrued; provided, however, that all actions for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime shall be brought within two years after the right of action has accrued.

In Clark v. Coats & Clark, Inc., 865 F.2d 1237, 1242 (11th Cir. 1989), the Eleventh

Circuit held that the 2 year statute of limitations applied to suits seeking to recover ERISA

benefits, lost wages and other benefits.  In discussing whether ERISA benefits should be

treated as lost wages, the Eleventh Circuit stated:

> The focus of the ERISA statute at issue in this case does not encompass
> individual or personal rights. The primary purpose of ERISA is to
> provide adequate retirement income to persons who have spent their
> careers in a productive work capacity.

Coats & Clark, 865 F.2d at 1242.  The court then applied the two year statute of limitations

contained in O.C.G.A. § 9-3-22.

Likewise, the Georgia Supreme Court applied the two year statute of limitations in a

lawsuit where Atlanta City employees were suing for back wages based on a city ordinance.

City of Atlanta v. Adams, 256 Ga. 620 (1987).  The Georgia Court of Appeals had previously

found that the six year statute of limitations applied.  Adams v. City of Atlanta, 179 Ga. App.

719 (1986).

The Supreme Court held that the "contract" between the employer and the employees

was created by the ordinance, and thus outside the common law.  City of Atlanta, 256 Ga. at

620.  Further, the Court implies that any other contract between the parties for wages "would

have been invalid" under the common law. Id.  Therefore, without some sort of statutory

authority, Plaintiffs claim might fail at common law, notwithstanding the statute of limitations

question.  It is not clear if such a conclusion is a correct statement of the law, but the language

of the opinion makes it appear that the Georgia Supreme Court sees that the wages in this

particular case are somehow governed by positive or statutory law.

The vague statements by the Georgia Supreme Court are used by both parties to

support or distinguish their positions in this case.  Plaintiffs argue that their claims are not

governed by the City of Atlanta case because they are not public employees and that there

does exist a contract between the Defendant farmers and the Plaintiffs.  Defendants argue that

Plaintiffs "contract" is the product of federal law and that no common law contract exists

7

between the parties.

Plaintiffs, on the other hand, argue that despite the seeming clear reasoning of the Eleventh Circuit and the Georgia Supreme Court, a six year statute of limitations applies. Their position is not without substantial support. Since the date of the City of Atlanta and the Coats & Clark decisions, the Georgia Court of Appeals, various district courts and the Eleventh Circuit have issued opinions that appear to contradict the City of Atlanta and Coats & Clark decisions.

In 1990, the Georgia Court of Appeals ruled that a six year statute of limitations governed the employment contract of teachers employed by the Muscogee County Board of Education. Musocgee County Bd. of Educ. v. Boisvert, 196 Ga. App. 537 (1990). In its answer, the Board raised the defense of the statute of limitations. Muscogee County Bd of Educ., 196 Ga. App. at 540. Prior to trial of the separate suits, the parties entered into an agreement consolidating the lawsuits. The trial court denied the Board's motion for summary judgment but dismissed the claims that were more than six years old. Id. It is unclear whether the Board argued before the trial court that the claims were governed by the two year statute of limitations.

The Board did argue on appeal that the teachers' claims were governed by the two year statute of limitations, O.C.G.A. § 9-3-22. The Board argued that "although plaintiffs sued for breach of contract, the only basis of recovery was [the state law]." Id. at 539. The court agreed that the contracts were made in conformance with state law, but that written contracts "further provided '[i]f the valid Georgia Teacher's certificate of the correct years of experience were not shown herein at the time of the execution of the contract, the contract will be adjusted accordingly for the entire period.'" Id. The court concluded that the claims were based "'upon an enforceable simple contract.'" Id. The court distinguished the City of Atlanta case as being based solely on the ordinance in question. Id. Apparently, according to the court's reasoning, the language allowing for an adjustment for the correct number of years of

experience took the contracts outside the purview of being based on statutory language. Even so, it is not hard to disagree that the Court of Appeals disregarded the Georgia Supreme Court's ruling on what appears to be the same legal question with very similar facts. A careful review of the case shows, however, that the court distinguished City of Atlanta and conceivably did not misapply the law. At the same time, the court recognized the distinction that contracts based on statutory rights are governed by the two year statute of limitations.

The issue is complicated even more by recent district court decisions. The Northern District of Georgia ruled in 2006 that migrant workers employed pursuant to the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. 1801, pursuing AWPA claims were subject to the Georgia six year statute of limitations governing written contract claims. Escolastico De Leon-Granados v. Eller and Sons Trees, Inc., 452 F.Supp.2d 1282 (N.D.Ga. 2006). The district court stated that the workers contracts were the "'Job Clearance Orders" required by 29 U.S.C. § 1822 and 29 U.S.C. § 1831. De Leon-Granados, 542 F.Supp.2d at 1284. These statutes, work orders and other regulations defined the terms of the "working arrangements" which defined the contracts. Id. As such, "'where the contract forming the basis of the action is in writing the provisions of O.C.G.A.§ 9-3-24 are applicable.'" Id. (quoting Muscogee County Bd. Of Educ. V. Boisvert, 196 Ga. App. 537 (1990) (emphasis in original). Of note, however, the district court stated, "Defendant has not cited a single case in which the two-year statute of limitations provided in O.C.G.A. § 9-3-22 was applied to a contractual claim for wages." Id. The court also noted that the AWPA is a remedial statute and that a longer statute of limitations period served such a purpose. Id.

Another Georgia district court reached a similar conclusion in 2006 on the exact question before this Court. Morales-Arcadio v. Shannon Produce Farms, Inc., 2006 WL 140590 (S.D.Ga. 2006). As are the facts here, the plaintiffs brought suit under the FLSA and state law for breach of their employment contracts. Morales-Arcadio, 2006 WL 140590 at *1. Defendants moved to dismiss some or all of the contract claims as barred by the statute of

9

limitations. Id.

The court noted that under the FLSA, the statute of limitations for willful acts is three years, while the statute of limitations for negligent acts is two years. Id. at *2.   The court observed, as to the facts of that case, there was no issue with the FLSA statute of limitations. Id.  The issue, as is the issue before this Court, was whether the plaintiffs' state law breach of contract claims were barred by the applicable statute of limitations. Id.

The district court observed that plaintiffs claims under state law were essentially the same as those made under the FLSA.  Under the contract claims, the plaintiffs sought damages for "hours shorting," failing to reimburse for expenses, and for failure to pay the agreed upon wage. Id. at *1.  Under the FLSA claims, plaintiffs claimed they were not paid the federally-mandated minimum wages for the years in question.  Id.

In discussing the statute of limitations issue, the district court made some initial statements and assumptions:

> Federal regulations make clear that H-2A workers hold contract claims for underpayment. 20 C.F.R. § 655.102(b)(14); *see also Arriaga v. v. Fla., Pac. Farms, LLC,* 305 F.3d 1228, 1246 n. 27 (11th Cir.2002); *De Luna-Guerrero v. N.C. Growers' Ass'n, Inc.,* 338 F.Supp.2d 649, 652 (E.D.N.C.2004). Thus, by the plain terms of O.C.G.A. § 9-3-24, the plaintiffs' breach of employment contract claims are governed by this *six-year* statute of limitations

Id. at *3.

A review of Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228 (11th Cir. 2002), reveals that the Eleventh Circuit accepted without question that the farm workers had a claim under Florida law for breach of contract.  The court did not discuss the statute of limitations for contract claims or the distinction that Georgia courts seem to make between written contracts, contract for wages and contracts "authorized by law."  Even so, the district court placed tremendous emphasis on the fact that the Eleventh Circuit accepted the fact that farm workers did have a state law contract claim.

As alluded to previously, the contract between the farmer and the workers was created

by the regulations governing the H-2A program.  20 C.F.R. § 655.102(b)(14) provides:

> (14) Copy of work contract. The employer shall provide to the worker,
> no later than on the day the work commences, a copy of the work
> contract between the employer and the worker. The work contract shall
> contain all of the provisions required by paragraphs (a) and (b) of this
> section. In the absence of a separate, written work contract entered into
> between the employer and the worker, the required terms of the job
> order and application for temporary alien agricultural labor certification
> shall be the work contract.

20 C.F.R. § 655.102(b)(14).  As this section implies, the terms of the farm workers'

employment are dictated by the laws governing the H-2A program.

   In fact there is no requirement that the worker and the employer enter into a bilateral

contract.  If they do not enter into a bilateral contract, then the job order, the specifics of

which are mandated by federal law, becomes the contract. The district court acknowledged

that "regulations governing the H-2A program expressly state that the job order creates a

contract between the employer and the employee," it did not, however,  acknowledge that the

contract "was authorized by law." Morales-Arcadio, 2006 WL 140590 at *3; see City of

Atlanta v. Adams, 256 Ga. 620 (1987).

   Defendants argued that City of Atlanta should apply and that the statute of limitations

should be two years.  The district court rejected the argument and found that there was a

contract, apparently written, between the parties.[6]   Even though the job order, the terms of

which are dictated by federal law, was not a traditional bilateral "simple contract," the Court

found the six year statute of limitation to apply.

   Plaintiffs in this case also rely on an Eleventh Circuit opinion for their position that

their contract claim is governed by the six year statute of limitations.  Harrison v. Digital

Health Plan, 183 F.3d 1235 (11th Cir. 1999). In Harrision, the court of appeals found that the

district court erred when it applied a one year statute of limitations claim to a claim for

medical benefits under an ERISA plan.  Harrison, 183 F.3d at 1241.  The court found that the

---

[6]. O.C.G.A. § 9-3-24 provides that a six year statute of limitations applies to "all
actions upon simple contracts in writing."

11

district court should have applied the six year statute of limitations for written contracts.  Id.

The court's reasoning in Harrison is instructive.  The court pointed out that ERISA does not contain a statute of limitations and that federal courts are to look to state law for the applicable statute of limitations. Harrision, 183 F.3d at 1238-39.  While borrowing the state statute of limitations, the federal court is still applying federal law because it is closing the gap left in the law by Congress.  Id. at 1239.  The court continued to explain the process:

> In selecting the state limitations period most relevant to the federal cause of action, the district court must first characterize the essential nature of the plaintiff's claim. *Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1241 (11th Cir.1989). "The characterization of [a federal claim] for statute of limitations purposes is derived from the elements of the cause of action, and Congress' purpose in providing it. These, of course, are matters of federal law." *Wilson,* 471 U.S. at 268-69, 105 S.Ct. at 1943. After characterizing the essential nature of the claim, the court must borrow the limitations period for the most analogous state law claim.

Id.

The court went on to analyze the claim made by Harrison.  While ERISA could encompass any number of benefits, such as retirement income, disability income, medical benefits or treatment, the benefits sought by Harrison were "medical benefits that were allegedly wrongfully denied under the plan." Id.  As the benefits were not wages or the like, the district court erred in applying the one year statute of limitations for workers' compensation claims.  Id.  As the suit was to enforce Harrison's medical benefits under the plan, her claim to enforce those benefits "is essentially an action for breach of contract and therefore Georgia's six-year statute of limitations" applies.  Id.

Though not addressed in any of these cases, but raised by Defendants, the policy reasons supporting a shorter statute of limitations for the recovery of wages, either by statute, ordinance or contract.  The United States Supreme Court, though in discussing an action for employment discrimination stated:

> The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from

12

employment decisions that are long past.

Delaware State College v. Ricks, 449 U.S. 250, 256-257, 101 S.Ct. 498 (1980). As with

employment discrimination, a review of the statutory scheme governing the recovery of wages

is supported by a similar policy concern.

As pointed out previously FLSA violations must be brought within two years, or three

years, if the violation was willful, from the date of the violation. 29 U.S.C. § 255(a). The

Georgia legislature has determined that an action to recover unpaid wages must be initiated

within two years of the violation. O.C.G.A. § 9-3-22. Under Georgia law, an action to

recover workers' compensation benefits has to be filed within one year of the date that the

action accrues. O.C.G.A.§ 34-9-281(b)(2). Further, the United States only requires

employers to maintain payroll records for H-2A workers for a period of three years. 20 C.F.R.

655.102(b)(7)(iv).[7] There is a clear public policy and statutory argument that Congress

intended H-2A employees to recover wages within the same statute of limitations period as

other workers. At the same time, Congress and state legislatures intended that the statute of

limitations for the recovery of wages be relatively short.

The question of whether Plaintiffs breach of contract claims are in reality wages or a

contract for wages set by statute is equally clear. As noted before, Plaintiffs do not produce a

bilateral contract for wages and benefits between Plaintiffs and Defendants. Instead, they rely

on the regulatory scheme to define whether a contract exists and to determine the terms. In

the absence of a written bilateral contract, the regulations mandate that the "required terms of

the job order and applications for temporary alien agricultural labor certification shall be the

work contract." 20 C.F.R. § 655.102(b)(14). The minimum wages, benefits and working

conditions are also set by regulation. 20 C.F.R. § 655.102. As noted previously, the "adverse

---

[7]. 20 C.F.R. § 655.102(b)(7)(iv) states:

> (iv) The employer shall retain the records for not less than three years
> after the completion of the work contract.

minimum wage rate" (AEWR) for 2004 of $7.88 an hour is also set by regulation. The federal minimum wage is $5.15 per hour and is also set by law (FLSA). Other than the fact that the regulations say that these terms and conditions constitute a contract between the farmer and the H-2A worker, there is nothing to indicate that their relationship is governed by common law contract, to include damages for breach.

This Court recognizes that other district courts in Georgia have reached opposite conclusions. It is also arguable that the Georgia state courts have reached opposite conclusions. None of these courts have attempted to analyze the confusing, seeming contradictory and disparate opinions that conceivably apply to the facts in this case. A careful review of those opinions, the regulatory and statutory scheme, leads this Court to conclude that Plaintiffs' state law breach of contract claims are such that they are governed by Georgia's two-year statute of limitations. Accordingly, Defendants' motion to dismiss the state law breach of contract claims (contained in Counts III-VI) arising before 2004 as barred by the two-year statute of limitation (Doc. 81) is **GRANTED.**

Motion to Dismiss-Lack of Jurisdiction

Defendants have also filed a motion to dismiss Plaintiffs' state law claims for lack of subject matter jurisdiction. (Doc. No. 85). As most or all of the state law claims have been dismissed as being barred by the statute of limitations, the motion is essentially without merit. If there are some remaining claims, the Court will entertain a motion to dismiss or motion for summary judgment. Accordingly, said motion (Doc. No. 85) is **DENIED as moot**.

Motion to Dismiss-Jose Rosalino Antonio-Candelaria

Defendants move to dismiss the named Plaintiff Jose Roalino Antonio-Candelaria for failing to appear at a noticed deposition. (Doc. 78). Plaintiffs oppose said motion.

The record is clear that Antonio-Candelaria failed to appear at properly noticed depositions and that Defendants attempted to accommodate Plaintiffs in rescheduling. As with earlier pleas by Plaintiffs', Antonio-Candelaria's excuse for failing to attend the

14

deposition was that he was working in Louisiana and that counsel was having trouble being able to contact him. According to Plaintiffs', as soon as they were able to contact Antonio-Candelaria, they attempted to reschedule the deposition and that Defendants refused to agree.

Dismissal for failure to engage in discovery is an extreme sanction. Fed.R.Civ.Pro. 37. Such a remedy is appropriate only in "extreme circumstances" and where there is some showing of willfulness or wrongdoing on the part of the party. Searock v. Stripling, 736 F.2d 650 (11th Cir. 1984).

Plaintiffs brought the instant suit knowing that they would have to participate in discovery and come back to Georgia to engage in discovery. While the Court recognizes that the Plaintiffs are essentially indigent, they are still bound by the rules and case law that govern the practice and procedure in the federal courts. Plaintiffs have an affirmative obligation under the rules to participate in discovery and not delay discovery. Even so, given the circumstance involved, it is not unwarranted that occasionally a named Plaintiff in this type of case would have trouble timely appearing at depositions.[8] However, it is not unreasonable, especially given the circumstances, for Plaintiffs to pay the costs associated with the noticed and scheduled deposition. Accordingly, Defendants' motion to dismiss for failure to engage in discovery (Doc. No. 78) is **DENIED.** Plaintiffs are reminded of their obligation to appear at properly noticed, or agreed upon, future depositions.

As this order makes clear, the scope of Plaintiffs claims have been substantially narrowed. Consequently, the extent and nature of the pending discovery disputes should also be narrowed. Accordingly, the parties are ordered to confer within 5 days and submit a joint written statement, not exceeding 2 pages, concerning which pending discovery motions are rendered moot, withdrawn or narrowed as a result of this order. Said statement should be filed **no later than Thursday, March 13,2008.**

---

[8]. The Court is more concerned with the allegations made by Defendants that few, if any, of the named Plaintiffs have appeared for deposition or that Plaintiffs have provided little or no specific discovery related to their claims.

**SO ORDERED**, this  4th  day of March, 2009.


　　　　　　　　　　　　　　 /s/W. Louis Sands
　　　　　　　　　　　　　**W. LOUIS SANDS,  JUDGE**
　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**